**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

HELENE LAX, Individually and on Behalf of     :
All Others Similarly Situated,                 :
                                               :  Civil Action No. ___1:16-cv-09438-GBD
        Plaintiff,                             :
                                               :
v.                                             :  **CLASS ACTION COMPLAINT FOR**
                                               :  **VIOLATIONS OF SECTIONS 14(a)**
TOMER KARIV, DAVID BEN AMI, ZEEV              :  **AND 20(a) OF THE SECURITIES**
BRONFELD, RANAN GROBMAN,                       :  **EXCHANGE ACT OF 1934**
KATHERINE WOLF, YUVAL YANAI,                   :
MACROCURE LTD., and LEAP                       :  **JURY TRIAL DEMANDED**
THERAPEUTICS, INC.,                            :
                                               :
        Defendants.                            :
-------------------------------------------------------

## CLASS ACTION COMPLAINT

Helene Lax ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is a class action brought by Plaintiff on behalf of herself and the other ordinary shareholders of Macrocure Ltd. ("Macrocure" or the "Company"), except Defendants (defined below) and their affiliates, against Macrocure, the members Macrocure's board of directors (the "Board" or the "Individual Defendants"), and Leap Therapeutics, Inc. ("Leap") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Macrocure and Leap.

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading proxy statement and prospectus (collectively, the "Proxy") to be filed with the SEC and disseminated to Macrocure shareholders.  The Proxy recommends that Macrocure stockholders vote in favor of a proposed transaction whereby Macrocure will merge with and into M-Co Merger Sub Ltd. ("Merger Sub"), a wholly owned subsidiary of Leap, with Leap continuing as the surviving entity (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Macrocure common share issued and outstanding will be converted into the right to receive a fractional amount determined by multiplying the Exchange Ratio as defined in the Merger Agreement and to be determined at the time of the close of the Proposed Transaction (the "Merger Consideration").   Macrocure equityholders will own approximately 35% of the combined company and Leap equityholders will own approximately 65% of the combined company.   However, after giving effect to the $10.0 million equity investment and the adoption of Leap's 2016 Equity Incentive Plan, these ownership percentages will be 29.2% and 62.8%, respectively.

3.     As discussed below, the consideration Macrocure stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of Macrocure.  Defendants have now asked Macrocure's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act.   Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the terms and details

surrounding an alternative indication of interest the Company received from another biopharmaceutical company; (ii) details surrounding the discussions held between the Company and its financial advisor (Raymond James & Associates, Inc.) concerning Raymond James assisting with future financings for the combined company; and (iii) the financial projection for Leap, which were utilized and relied upon by the Board and Raymond James in assessing the fairness of the Proposed Transaction to Macrocure shareholders.

4.      The special meeting of Macrocure shareholders to vote on the Proposed Transaction is scheduled for December 19, 2016.  It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Macrocure's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and/or had an effect in this District; (ii) Macrocure common stock is listed and trades on the Nasdaq stock exchange, which is headquartered in this District; (iii) Macrocure published an announcement of the Proposed Transaction in a newspaper headquartered in this District; (iv) Leap's transfer agent and registrar is located in this District; (v) various meetings between Defendants and other related entities occurred in this District; and (vi) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Macrocure common stock and has held such stock since prior to the wrongs complained of herein.  Plaintiff is a resident of New York State.

10.      Individual Defendant David Ben Ami ("Ben Ami") is a co-founder of the Company and has served on the Board of Directors since it was founded in 2008.

11.      Individual Defendant Zeev Bronfeld ("Bronfeld") was appointed to the Board of Directors of the Company in 2008 and serves as Chairman of the Board.

12.      Individual Defendant Ranan Grobman ("Grobman") was appointed to the Board of Directors of the Company in 2012.

13.      Individual Defendant Tomer Kariv ("Kariv") was appointed to the Board of Directors of the Company in 2008 and is the Chairman of the Board.

14.      Individual Defendant Katherine Wolf ("Wolf") was appointed to the Board of Directors of the Company in 2014.

15.     Individual Defendant Yuval Yanai ("Yanai") was appointed to the Board of Directors of the Company in 2014.

16.     Defendant Macrocure is an Israeli Limited Company with offices principally located at 25 Hasivim Street, Petach Tika 4959383, Israel and in Radnor, Pennsylvania, and with a wholly-owned subsidiary, Macrocure, Inc. incorporated under the laws of the State of Delaware.  Macrocure is a biotechnology company focused on developed cell therapy products. Macrocure's common stock trades on the NASDAQ under the symbol "MCUR".

17.     Defendant Leap is a Delaware corporation that operates as a clinical-stage biopharmaceutical company focused on immune-oncology.

18.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants".

CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Macrocure common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

20.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of November 11, 2016, there were 17,932,079 outstanding shares of Macrocure common stock. The holders of these shares are believed to be geographically dispersed through the United States;

(b)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

      i.    Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

      ii.    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iii.    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.     <u>The Proposed Transaction Undervalues Macrocure</u>

21.     Macrocure is a biotechnology company that focuses on developing, manufacturing, and commercializing novel cell therapy products for the treatment of chronic and

other hard-to-heal wounds.  The Company was founded in 2008 and is headquartered in Petach Tikva, Israel.  The Company maintains a U.S. office in Radnor, Pennsylvania and lists its shares on the Nasdaq stock exchange.

22.      The Merger Consideration undervalues the Company's shares in light of its recent financial performance.  The Company's stock price increased approximately 143% in recent months, as reflected in the chart below:



23.      In recent months, analysts have noted that Macrocure's intellectual property portfolio makes it an attractive merger target.

24.      Despite the inadequate Merger Consideration and exchange ratio, the Board has agreed to Proposed Transaction.  It is therefore imperative that Macrocure's shareholders are provided with the material information that has been omitted from the Proxy, so that they can meaningfully assess whether or not the Proposed Transaction is in their bests interests prior to the forthcoming shareholder vote.

**B.**     **The Merger Agreement's Deal Protection Provisions Deter Superior Offers**

25.     In addition to failing to conduct an adequate sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Macrocure.

26.     First, Section 5.05 of the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Macrocure shareholders.  Specifically, the Merger Agreement generally prohibits the Company and Board from taking actions to: (i) initiate, solicit, propose or knowingly encourage or knowingly facilitate any inquiry or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, a Takeover Proposal; (ii) engage in, continue or otherwise participate in any discussions or negotiations relating to any Takeover Proposal; or (iii) provide any non-public information to any Person in connection with any Takeover Proposal.

27.     Additionally, the Merger Agreement grants Leap recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to negotiate with Macrocure, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

28.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Leap can easily foreclose a competing bid.  As a result, these provisions unreasonably favor Leap, to the detriment of Macrocure's public shareholders.

29.     Lastly, Section 6.08 of Merger Agreement provides that Macrocure must pay Leap a termination fee of $1.2 million plus expenses of up to $750,000 under certain circumstances in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Macrocure shareholders with a superior offer.

30.     Ultimately, these preclusive deal protection provisions restrain Macrocure's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

31.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Macrocure's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**C.     The Materially Incomplete and Misleading Proxy**

32.     On November 25, 2016, Macrocure filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy was furnished to the Company's shareholders along with a prospectus of Leap that was filed on September 26, 2016, and amended on November 16 and 22, 2016 ("Prospectus").  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

33.     With respect to the "Background of the Merger" section, the Proxy indicates that Macrocure received an indication of interest from another private biopharmaceutical company sometime around March 2016, and that the Board and Company management "had additional discussions, from time to time, with the other private company…" Proxy at 20.  However, the Proxy fails to provide *any* details concerning the proposed structure or value of the unidentified company's indication of interest or any details about the substance of the "additional discussions" that occurred between Macrocure and the unidentified company.  Shareholders would find such information material, as this information is necessary for them to assess whether a preferable strategic alternative was available to them but dismissed by the Board.  The omission of such information renders the vague description of the indication of interest and discussions with the unidentified company materially incomplete and misleading.

34.     Additionally, the Proxy notes that on August 8, 2016, the Board was advised that "Raymond James may be asked to assist with future financing for the combined company, although no agreements were then in place."   Proxy at 23.  The Proxy fails to provide any additional information concerning whether or not further discussions have occurred with Raymond James regarding it assisting with future financing, and, if so, when such discussions occurred and the substance of such discussions.  The Proxy also fails to provide any updated information about whether or not Raymond James is in fact expected assist with financing for the combined company.  Such information is necessary for shareholders to assess the significance of this conflict of interest, and to determine how much weight, if any, to give to Raymond James' fairness opinion.  It is well settled that information that bears on whether an investment bank faces conflicts of interest is material to stockholders when deciding how to vote on a merger. The omission of this information renders the vague statements in the Proxy about Raymond

James potentially being asked to assist with future financing and Raymond James potentially providing financial services to Macrocure or Leap in the future materially incomplete and misleading.  *See* Prospectus at 82.

35.     With respect to Raymond James' *Discounted Cash Flow Analysis*, the Proxy notes that Raymond James utilized "Leap's estimated unlevered free cash flows for fiscal years ended December 31, 2017 through December 31, 2031."  Prospectus at 80-81.  However, the Prospectus fails to disclose Leap's unlevered free cash flow projections, which renders the projections included in the Prospectus on page 83 materially incomplete and misleading. Investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest.  Under sound corporate finance theory, the value of stock should be premised on the expected future cash flows of the corporation; accordingly, the question that Macrocure shareholders need to assess in determining whether to vote for the Proposed Transaction is clear: is the Merger Consideration being offered now fair compensation in light of Leap's expected free cash flows?  Without Leap's unlevered free cash flow projections, Macrocure shareholders will be unable to answer this question and assess the fairness of the Merger Consideration and exchange ratio.

36.     Furthermore, the Prospectus provides projections for certain non-GAAP metrics including Total Net Revenue, Total Unlevered After-Tax Income (Loss), and Total Unlevered After-Tax Income (Loss) (Risk Adjusted), but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconciling the non-GAAP projections to GAAP (*see* Prospectus at 83).

37.     When a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose that non-GAAP financial measure along

with comparable GAAP measures and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

38.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Defendants have included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.   And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.

39.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

40.     The above-referenced line item projections that have been omitted from the Proxy/Prospectus are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

41.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement

---

[2] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017),
https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: (i) the terms and details surrounding an alternative indication of interest the Company received from another biopharmaceutical company; (ii) details surrounding the discussions held between the Company and Raymond James concerning Raymond James assisting with future financings for the combined company; and (iii) the financial projection for Leap.

45.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46.    Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Defendants were privy to and had knowledge

of the projections for Leap and the details surrounding discussions with other interested parties and Raymond James.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the bankers' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and Leap's financial projections.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Macrocure within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Macrocure, and participation in and/or awareness of the Macrocure's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Macrocure, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Macrocure, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy.

16

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

56.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  December 6, 2016                           Respectfully submitted,

By: */s/ Gregory M. Nespole*
Gregory M. Nespole
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: 212-545-4600
Fax: 212-686-0114
Email: gmn@whafh.com

**MONTEVERDE & ASSOCIATES PC**

Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Tel:  212-971-1341
Fax:  212-601-2610
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*